UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AMERICAN JETWAY CORPORATION,

    Plaintiff/Counter-Defendant,      Case No. 04-72957

v.      Honorable John Corbett O'Meara

CLAYTON CORPORATION,

    Defendant/Counter-Plaintiff.
_____/

**MEMORANDUM OPINION AND ORDER GRANTING IN PART**
**DEFENDANT'S FEBRUARY 28, 2006 MOTION FOR SUMMARY JUDGMENT**

This matter came before the court on defendant/counter-plaintiff Clayton Corporation's February 28, 2006 motion for summary judgment. Plaintiff American Jetway Corporation filed a response March 28, 2006; and Defendant filed a reply April 4, 2006. Oral argument was heard June 8, 2006. For the reasons that follow, the court will grant in part Clayton's motion for summary judgment.

**BACKGROUND FACTS**

Between 2000 and 2002, plaintiff American Jetway Corporation ("Jetway") purchased a number of valve products from defendant/counter-plaintiff Clayton Corporation that were used on the top of aerosol canisters to disburse various types of products. The valves performed without incident until they were used on a new type of product called Red Oxime TRV.

At Jetway's request in August 2002, Clayton performed a preliminary evaluation related to the use of a particular valve, the 1218 valve, on the product. Clayton had received two canisters from Jetway and tested the product for 12 days. On August 30, 2002, Clayton advised Jetway of the results, stating that the preliminary evaluation found the valves to be compatible. Jetway itself

performed no further evaluations and put the product into production. Months later some of the product failed to dispense properly from the canisters. Jetway eventually gave its customer Barnes, not a party to this action, a credit of over $85,000 because of the failure of Barnes' product to dispense properly from the canisters.

At the center of this complaint is the August 30, 2002 correspondence that Clayton sent to Jetway, which read in part:

> Today we performed some preliminary evaluation of the Spec 1218 valve with these products. The results of this preliminary evaluation were as follows . . . . You may use this information along with any testing you have performed to assure your customer that the Spec #1218 valve is suitable for their products. We will continue to evaluate the cans we were sent.

Defendant's Ex. H. The question is whether this correspondence means that Clayton determined that the valves were compatible or whether, as the plain language of the letter states, upon **preliminary** evaluation, the valves functioned well with the product.

Jetway has alleged the following eight causes of action against Clayton: 1) breach of contract, 2) breach of warranty, 3) negligent performance of contract, 4) intentional misrepresentation, 5) innocent misrepresentation, 6) silent misrepresentation, 7) negligent misrepresentation, and 8) indemnification.

Clayton's counterclaim is for breach of contract. Pursuant to the terms of an agreement between the parties, Jetway promised to buy all of its valves from Clayton for two years. However, Jetway stopped buying its valves from Clayton after the failure of the 1218 valve with the Barnes product. Clayton alleges damages in the amount of $16,686.75.

**LAW AND ANALYSIS**

Defendant Clayton argues that its valves were not defective in any way and that the product Jetway put in the cans had hardened and could not have been dispensed through the canisters. It is incumbent upon Jetway to show that it was the valve that failed; however, there appears to be no evidence that the valve malfunctioned and was the **cause** of the failure of the product to dispense from the can. Jetway claims that a report by Akron Rubber Development Laboratory shows that the valves malfunctioned. However, the report, Plaintiff's Ex. D, contains no such conclusion. Likewise, Plaintiff's Ex. E, which is a report from Ken Brinks' examination of the Clayton valve, shows that the product hardened in the can. "This data indicates the valve gasket is failing. . . . Since this product is moisture sensitive and curing, any moisture migrating through the valve material will cure the RTV." In this case there is simply no evidence that the failure of the product to dispense from the can was because of a malfunction of the valve.

Furthermore, Clayton's purchase orders routinely included the following language: "**Component Parts Compatibility** Clayton Corporation will supply samples, technical support, and provide suggestions to help the customer select the proper Clayton components. The customer is responsible for approving components for form, fit, and functions." Defendant's Ex. D, submitted at oral argument.

Although Plaintiff contends that this language did not apply to the purchase order for the 1218 valves, it has failed to offer any other purchase order or modification of the July 20, 2000 purchase order that was applicable to this purchase.

Plaintiff has presented no evidence to show that the valve's failure was the fault of defendant Clayton. In addition, in light of the purchase order language that states that customer Jetway is

3

responsible for approving components for form, fit, and function, the court finds that defendant Clayton is entitled to summary judgment on all of Jetway's claims.

In the alternative, the court would also grant Defendant's motion upon an analysis of each of the eight causes of action in Plaintiff's complaint, beginning with Count I, breach of contract. In this case there is no breach of contract because Defendant supplied the valves as ordered by the purchase order.

Count II is a claim for breach of warranty, which "tests the fitness of the product and requires that the plaintiff 'prove a defect attributable to the manufacturer and causal connection between that defect and the injury or damage of which [plaintiff] complains." Piercefield v. Remington Arms Co., 375 Mich. 85, 98-99 (1965). Importantly, the burden is on the plaintiff to prove that the product was defective at the time it left the defendant's control. Prentis v. Yale Mfg. Co., 421 Mich. 670 (1984). Plaintiff has no evidence that the valve was defective when it left Clayton's control.

An action in tort, in this case negligent performance of a contract (Count III), requires a breach of duty separate and distinct from a breach of contract. Haas v. Montgomery Ward & Co., 812 F.2d 1015 (6th Cir. 1987). Plaintiff's claim in this case relates directly to the performance of a contract for sale of the 1218 valves; therefore, Plaintiff's tort claim must be dismissed.

There is absolutely no evidence in this case that Clayton intentionally misrepresented its product to Jetway as alleged in Count IV. Likewise, there is no evidence of innocent, negligent or silent misrepresentation, Counts V, VI and VII, respectively.

Count VIII seeks indemnification from Clayton. After the canisters were removed from the market, Jetway gave its customer Barnes a credit of over $85,000. There is no express provision for indemnity, however, in the purchase orders between Jetway and Clayton. Furthermore, common

4

law indemnity and implied contractual indemnity require that a party seeking indemnification be free from active negligence.  Paul v. Bogle, 193 Mich. App. 479, 490-91 (1992).  In this case Jetway's failure to make sure the product was properly tested before putting it in the market precludes its claim for indemnity.

### Clayton's Counterclaim

The parties contracted on June 4, 2002, that "for the period June 1, 2002 through May 31, 2004 . . . American Jetway agrees to purchase all valves, caulk tip covers and caulk tips from Clayton . . . ."  Defendant's Ex. P.

Jetway claims that its customer Barnes refused to do business with Jetway if Jetway continued to use Clayton's valves.  Thus, Jetway argues, it is excused from performance under the doctrine of frustration of purpose.  Clayton, however, claims that Jetway purchased valves from other manufacturers **before** the first reported complaint of the product failure.  Defendant's Ex. D to reply brief.  Therefore, a question of fact exists regarding Jetway's breach of the June 4, 2002 contract; and Clayton is not entitled to summary judgment on its counterclaim.

### ORDER

It is hereby **ORDERED** that defendant Clayton's February 28, 2006 motion for summary judgment is **GRANTED** as to the complaint and **DENIED** as to the counterclaim.

                                                s/John Corbett O'Meara
                                                United States District Judge

Dated: July 12, 2006

Certificate of Service

I hereby certify that a copy of this Memorandum Opinion and Order was served upon the attorneys record by electronic means on July 12, 2006.

                                                s/William J. Barkholz
                                                Courtroom Deputy Clerk